UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE M. PERKINS, on behalf of Alfred Earl Perkins (deceased),<br><br>        Plaintiff,<br><br>      v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>        Defendant. | Case No. CV 16-6089 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

## I. SUMMARY

On August 15, 2016, Stephanie M. Perkins ("plaintiff") filed a Complaint on behalf of her late husband, Alfred Earl Perkins ("claimant"), seeking review of the Commissioner of Social Security's denial of claimant's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is hereby substituted for Carolyn W. Colvin as the defendant in this action.

Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; August 16, 2016 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On January 24, 2013, claimant filed an application for Disability Insurance Benefits alleging disability beginning on July 28, 2010 ("alleged onset date"), due to severe headaches, uncontrollable shaking, high blood pressure, stress, and problems with memory and concentration. (Administrative Record ("AR") 10, 166, 178). The claimant passed away on October 16, 2014. (AR 10, 175). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel on behalf of the claimant) and a vocational expert on January 27, 2015. (AR 26-49).

On March 2, 2015, the ALJ determined that the claimant was not disabled through the date of his death. (AR 10-20). Specifically, the ALJ found that prior to the claimant's death: (1) the claimant had engaged in substantial gainful activity subsequent to the alleged onset date (AR 12-13); (2) the claimant suffered from the following severe impairments: diabetes mellitus, seizure disorder, history of kidney transplantation, obstructive airway disease, lumbago, and depressive disorder not otherwise specified (AR 13); (2) the claimant's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 13-14); (3) the claimant retained the residual functional capacity to perform light work[2] (20 C.F.R. § 404.1567(b)) with additional non-

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "[T]he full range of
(continued...)

exertional limitations[3] (AR 14); (4) the claimant was unable to perform any past relevant work (AR 18-19); (5) there were jobs in significant numbers in the national economy that the claimant could have performed, specifically office helper, mail clerk, and information clerk (AR 19); and (6) the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely credible (AR 15).

On June 30, 2016, the Appeals Council denied plaintiff's application for review. (AR 1).

### III. APPLICABLE LEGAL STANDARDS

#### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

---

[2](...continued)
light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." See SSR 83-10, 1983 WL 31251, at *6; see also 20 C.F.R. § 404.1567(b) (noting light work may "require[] a good deal of walking or standing").

[3]The ALJ determined that the claimant: (i) could not climb ladders, ropes, or scaffolds; (ii) could not work at unprotected heights or around heavy machinery; (iii) could not work in sunlight; (iv) needed to avoid even moderate exposure to dust, fumes, gas, odors, chemicals, and mold; and (v) was limited to simple routine tasks with no more than occasional changes in the workplace. (AR 14).

In assessing whether a claimant is disabled, an ALJ is required to use the following five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citations omitted); see also 20 C.F.R. § 404.1520(a)(4) (2012) (explaining five-step sequential evaluation process).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

**B.      Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal

error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)). To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

While an ALJ's decision need not discuss every piece of evidence or be drafted with "ideal clarity," at a minimum it must explain the ALJ's reasoning with sufficient specificity and clarity to "allow[] for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations and internal quotation marks omitted); Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) (citation and quotation marks omitted).

An ALJ's decision to deny benefits must be upheld if the evidence could reasonably support either affirming or reversing the decision. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457). Nonetheless, a court may not affirm "simply by isolating a 'specific quantum of supporting evidence.'" Id. at 882 (citation omitted). In addition, federal courts may review only the reasoning in the administrative decision itself, and may affirm a denial of benefits only for the reasons upon which the ALJ actually relied. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. Treichler v. Commissioner of Social Security Administration, 775

F.3d 1090, 1099 (9th Cir. 2014). An ALJ's error is harmless if (1) it was inconsequential to the ultimate nondisability determination; or (2) despite the error, the ALJ's path may reasonably be discerned, even if the ALJ's decision was drafted with less than ideal clarity. Id. (citation and quotation marks omitted).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV. DISCUSSION

The parties basically agree that the ALJ erred by not addressing competent lay statements about the claimant provided by the claimant's sister, Sharon Flanagan ("Ms. Flanagan") in a "Function Report – Adult – Third Party" ("Flanagan Third Party Report"). (Plaintiff's Motion at 7; Defendant's Motion at 10-12) (citing AR 195-203). As the Court cannot confidently conclude that such error was harmless, a remand for additional investigation and/or explanation is appropriate.

### A. Pertinent Law

Lay witness statements about a claimant's symptoms or how an impairment impacts the claimant's ability to work is competent evidence that "*cannot* be disregarded without comment." Molina, 674 F.3d at 1114 (citation and quotation marks omitted; emphasis in original); see also Tobeler v. Colvin, 749 F.3d 830, 833-34 (9th Cir. 2014) (same re: lay written statements) (citations omitted). An ALJ "must give reasons that are germane to each witness" for rejecting competent lay witness testimony. Molina, F.3d at 1114 (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). An ALJ is not always required to discuss lay testimony on an "individualized, witness-by-witness basis." Id. For instance, "if the ALJ

6

gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Id. (citing Valentine v. Commissioner Social Security Administration, 574 F.3d 685, 694 (9th Cir. 2009)).

When an ALJ disregards or fails to provide germane reasons for rejecting competent lay evidence, reversal is not warranted if the ALJ's error was harmless. Id. at 1122 (citations omitted). Such errors may be deemed harmless if a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [overlooked lay evidence], could have reached a different disability determination." Robbins, 466 F.3d at 885 (quoting Stout, 454 F.3d at 1055-56).

**B.     Analysis**

Here, although the ALJ's decision overall appears very thorough, thoughtful, and articulate, it nonetheless entirely overlooked competent lay statements in the Flanagan Third Party Report. See, e.g., Molina, 674 F.3d at 1114-15 (noting "ALJ erred in failing to explain her reasons for disregarding [competent] lay witness testimony, either individually or in the aggregate"). The record may very well, as defendant contends, contain several germane reasons for rejecting Ms. Flanagan's lay statements. (Defendant's Motion at 11-12). Nonetheless, since the ALJ did not address such lay evidence at all, this Court may not affirm the ALJ's decision based on any such potential reasons.

The Court cannot confidently conclude that the ALJ's error was harmless. For example, the vocational expert testified, in part, that if a hypothetical individual with the same characteristics as the claimant were less productive (*i.e.*, "would miss work two times a month continuously" or be "off-task 15 percent of the time"), the individual would be unable to perform any prior or other work. (AR 47-49). As discussed below, there are competent lay statements in the Flanagan Third Party Report which, if fully credited, support inferences that the claimant's functioning was significantly more limited than the ALJ's residual

functional capacity assessment reflects, and that plaintiff's resulting level of productivity could have precluded all work. (AR 195-200). Hence this Court cannot confidently conclude that a reasonable ALJ would not have reached a different disability determination even if Ms. Flanagan's lay statements had been considered. Cf., e.g., Russell v. Colvin, 9 F. Supp. 3d 1168, 1187 (D. Or. 2014) (Commissioner did not satisfy burden at step five to prove there was other work in the national economy claimant could perform, in part, where vocational expert testified that hypothetical claimant "would be unemployable" if the claimant were "absent from work two days per month" or "unavailable ten percent or more of the time, either not at work or if she had to lie down").

  Defendant argues that the ALJ's error was harmless, in part, because the ALJ had "found plaintiff [sic] not fully credible, and Plaintiff does not contest the ALJ's finding." (Defendant's Motion at 12). An ALJ's failure to give germane reasons for rejecting competent lay evidence may be harmless to the extent (1) the lay witness described the same, specific limitations as the claimant did in his or her own testimony; (2) the ALJ provided well-supported and valid (*i.e.*, clear and convincing) reasons for rejecting the claimant's own testimony regarding the specific limitations; and (3) the reasons the ALJ articulated for rejecting the claimant's testimony regarding such limitations "apply with equal force to the lay testimony" the ALJ failed to address. See Molina, 674 F.3d at 1121-22 (citations omitted). In such cases, an ALJ's decision must be affirmed even if the ALJ did not "clearly link" rejection of the specific lay testimony to the reasons expressed for rejecting the claimant's similar testimony. Id. at 1121 (citation omitted). Here, however, the record does not support finding the ALJ's error harmless under such a theory.

  First, the lay witness did not describe *all* of the same, specific limitations as the claimant did in his own function report. For example, Ms. Flanagan's statements in several respects conflict with the claimant's, as defendant recognized

(Defendant's Motion at 11), and even reflect more significant functional limitation than the claimant's statements.  (Compare AR 195, 199, 200 [Flanagan statement that the claimant's impairments affected walking and standing, the claimant "can't stand or walk for a long length of time," and the claimant purportedly could walk only 20 minutes/three blocks before needing to rest for "maybe 10 [minutes]"] with AR 223 [claimant noting no problem with walking or standing]; compare AR 196 [Flanagan noting claimant had difficulty buttoning shirt/zipping pants, and "son shaves him"] with AR 219 [claimant noting no problem with personal care]; compare AR 198 [Flanagan noting claimant "can't wash dishes because . . . he breaks things"] with AR 220 [claimant stating he could wash dishes for 30 minutes in the morning]; compare AR 199 [Flanagan statements that claimant had "not been able to [go fishing]" and "won't go out alone"] with AR 221 [claimant's statements that he would "go fishing" with others and "go outside [alone] every day"]); but compare AR 198 [Flanagan noting claimant shops in stores for "his personal items or . . . a few household items"] with AR 221 [claimant's statement that he did "no shopping at all"]).

      Second, the reasons the ALJ articulated for rejecting the claimant's statements do not appear to "apply with equal force" to several of Ms. Flanagan's lay statements.  For example, evidence that the claimant had a "primarily non-medical explanation for [his] unemployment subsequent to the alleged onset date" (AR 15, 17-18) arguably might undermine the credibility of the claimant's assertion that he suffered from a disabling condition.  Nonetheless, evidence which suggests that *the claimant* was dishonest about his true reason for seeking disability benefits raises no questions about *Ms. Flanagan's* overall veracity as a witness, much less provide a germane reason for discrediting lay statements regarding Ms. Flanagan's personal observations of the specific impact the claimant's impairment-related symptoms had on the claimant's day-to-day functioning.  (AR 195-200).

Similarly, the ALJ wrote that "the claimant acknowledged activities and abilities that suggest he [] remained capable of physical and mental activities consistent with those in the [ALJ's] residual functional capacity assessment [for the claimant]." (AR 18). Nonetheless, if credited as true, several of Ms. Flanagan's statements regarding her observations of the claimant's functional limitations would actually undermine the ALJ's reasons for discrediting the claimant. (Compare AR 18 [ALJ finding the claimant less credible in light of "the claimant's reported activities and abilities," specifically evidence that the claimant, among other things, "remained able to . . . wash dishes, go outside every day, and travel unaccompanied," "enjoyed fishing," and "had no problems with standing")] with AR 195, 198-200 [Flanagan observations that the claimant had difficulty with walking and standing, "[could not] wash dishes[,]" "[would not] go out alone," and had "not been able to [go fishing]").

Finally, the ALJ discredited the claimant's overall subjective statements, in part, because "the longitudinal [medical] evidence in th[e] case [] fails to reveal evidence of ongoing, disabling symptoms since the alleged onset date." (AR 15-17). Nonetheless, an ALJ may not discredit otherwise competent *lay* statements solely because they are "*not supported* by medical evidence in the record." Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) (emphasis added) (citing Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996)); Massey v. Commissioner of Social Security Administration, 400 Fed. Appx. 192, 194 (9th Cir. 2010) ("[An] ALJ may not reject lay testimony solely because it is not supported by objective medical evidence.") (citing id.).

///
///
///
///
///

## V. CONCLUSION[4]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[5]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: April 17, 2017

                                                /s/
                                     Honorable Jacqueline Chooljian
                                     UNITED STATES MAGISTRATE JUDGE

---

[4] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[5] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ." Garrison, 759 F.3d at 1019 (citation and internal quotation marks omitted).